UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL EDWARD TURNER,<br><br>Petitioner,<br><br>v.<br><br>DAVID BAUGHMAN,<br><br>Respondent. | Case No. 16-cv-06495-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

As grounds for federal habeas relief, petitioner Gil Edward Turner alleges that (1) the trial court violated his right to due process when it denied his motion to dismiss the murder charge after the prosecution rested; (2) defense counsel rendered ineffective assistance; and (3) there was cumulative error. None of these claims has merit. The petition is DENIED.

## BACKGROUND

In 2011, Turner shot and killed Tony Reynolds in front of Turner's house while in view of Terry Amons, Turner's stepfather, and Leland Harrison, their neighbor in the Parchester Village neighborhood in Richmond. (Ans., Dkt. No. 13 (State Appellate Opinion, *People v. Turner*, No. A141608, 2015 WL 5725013 (Cal. Ct. App. Sept. 30,

2015) (unpublished)) at 231.)[1] Harrison testified that just after he had seen and said hello to Reynolds, he saw a person (later identified as Turner) "with a hood on c[o]me out of the driveway and just sho[o]t him." (*Id.*, Dkt. No. 13-1 at 88.) Harrison reported the shooting and told the police that Turner blamed Reynolds for the death of Turner's stepbrother, Michael Amons, seven years prior. (*Id.*, Dkt. No. 13 at 231-232.)

Turner testified at trial that he had used cocaine and marijuana on the night before, and had used cocaine on the day of, the shooting. (*Id.*, Dkt. No. 13-5 at 8.) He testified that on the day of the killing a friend told him that Reynolds was leaving the neighborhood and advised Turner, "Don't trip." (*Id.* at 10.) Turner also testified that though he was armed when he approached Reynolds (Turner always carries a gun for protection), he did not intend to shoot him. (*Id.* at 10.) He drew his gun when Reynolds moved in a way that alarmed Turner. (*Id.* at 13.) The gun went off, he averred, during the subsequent struggle, during which Reynolds grabbed the hand in which Turner was holding the gun. (*Id.* at 13-14.)

On cross-examination, Turner was asked about a prior felony conviction for robbery. When arrested for that crime, Turner told police that there had been a struggle for the gun and that the robbery victim had gotten the gun away from him. (*Id.* at 18-19.) Those were lies, he admitted at the Reynolds trial. (*Id.* at 19.)

Rap lyrics handwritten by Turner were found in his cell and presented at trial. The lyrics referred to the Parchester neighborhood, drive-by shootings, showed support for "an eye for an eye" justice, and declared hopes that his stepbrother Michael would rest in peace. (Ans., Dkt. No. 13 at 233.)

A Contra Costa County jury convicted Turner of first degree murder and found true two enhancement allegations. In consequence, Turner was sentenced to 75 years to life in state prison. (*Id.* at 235.) His efforts to overturn his conviction in state court were unsuccessful. This federal habeas petition followed.

---

[1] The Court cites to the page numbers generated by the electronic filing system.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

# DISCUSSION

## I. Denial of Acquittal Motion

At the close of the prosecution's case, Turner moved for a judgment of acquittal on the first degree murder charge on grounds that there was insufficient evidence of premeditation or planning. (Ans., Dkt. No. 13 at 235.) The trial court denied the motion because the jury could reasonably conclude "there was premeditation and deliberation by the . . . way in which the crime was committed, the manner in which the victim was approached, the fact that the victim was unarmed . . . and that it appeared that he was in a sense ambushed." (*Id.*) Turner alleges that the trial court violated his right to due process when it denied his motion.

This claim was rejected on appeal. The state appellate court found sufficient evidence premeditation and deliberation in the record: Turner blamed Reynolds for the death of his stepbrother; Turner's girlfriend testified that Reynolds's name came up every time Michael's death was discussed; and Harrison, a longtime resident of Parchester Village, "watched Turner walk within a few feet of Reynolds, and shoot him four times." (Ans., Dkt. No. 13 at 237.)

I will construe this claim as a challenge to the sufficiency of the evidence. When reviewing a state court's conviction for sufficiency of the evidence, a federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). In addition to this highly deferential standard, a federal court must accord "considerable deference" to a state court's determination that there was sufficient evidence under *Jackson*. *Id.*

4

In California, first degree murder is the premeditated and deliberate unlawful killing of another with malice aforethought. Cal. Penal Code §§ 187 and 189. A premeditated killing under California law is a "killing [that] was the result of preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse." *People v. Prince*, 40 Cal. 4th 1179, 1253 (2007). Planning activity, motive and the manner of the killing are significant, though not the exclusive, factors to consider when determining whether the killing was a result of preexisting reflection. *Id.*

Under these legal principles, Turner's claim cannot succeed. The state appellate court reasonably determined that a rational trier of fact could have found the elements of premeditation and deliberation true beyond a reasonable doubt. The record shows that the prosecution presented evidence that Turner had a gun with him when he approached Reynolds; he had a long-standing motive to kill Reynolds; his family and friend had urged him to stay calm even though Reynolds was nearby; and Harrison testified that he saw Turner, hooded, walk up to Reynolds, shoot him more or less immediately, and then behave in a cool and collected manner, rather than a person aggravated by a sudden quarrel.

On this record, neither the trial court's denial of the acquittal motion (nor the jury's verdict) was so insupportable as to fall below the bare threshold of rationality. *Coleman*, 556 U.S. at 656. The state appellate court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## II.   Assistance of Counsel

Turner alleges that his defense counsel rendered ineffective assistance by (A) calling a witness who was detrimental to his defense; (B) failing to object to the admission of rap lyrics; and (C) failing to object to evidence of gang affiliation.

To make a federal claim of ineffectiveness of counsel, the petitioner must show that the counsel's performance fell below an objective standard of reasonableness and that, but for that deficiency, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The relevant analysis is whether there is any reasonable

5

argument made to show that counsel satisfied the *Strickland* standard. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). In the review, the court must be highly deferential and the presumption is that counsel had sound trial strategy. *Strickland*, 466 U.S. at 689. A tactical decision, even if in hindsight the decision was not the best tactical choice, is not considered ineffectiveness of counsel. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). An attorney's tactical decision to call a witness that has disparaging information about the client is not ineffective counsel, as long as the benefit could be a tactical reason that outweighs the danger of calling the witness. *Soto v. Ryan*, 760 F.3d 947, 979-80 (9th Cir. 2014).

### A. Calling a Detrimental Witness

Turner contends that trial counsel rendered ineffective assistance by calling Amons to testify. Not only did Amons's testimony provide evidence of premeditation, thereby aiding the prosecution, but defense counsel compounded his mistake by failing to request a jury instruction (CALCRIM No. 358) that directs the jury to treat out-of-court statements with caution. (Pet., Dkt. No. 1 at 5 and 11.)

#### i. Calling Amons to Testify

Defense counsel called Amons to the stand. He testified that on the afternoon of the shooting, he was in his front yard with Turner. Reynolds walked up to them, greeted Amons, and said to Turner, "Oh, hey, Little Killer," which was Turner's nickname. Turner shouted "That was my brother," and fired his gun twice before Reynolds attempted to grab the gun. A struggle ensued during which two more shots were fired into Reynolds. (Ans., Dkt. No. 13 at 233-234.)

Turner contends that "That was my brother" provided premeditation evidence in favor of the prosecution. Counsel's calling Amons to testify therefore constituted ineffective assistance, according to petitioner. (Pet., Dkt. No. 1 at 5.)

Amons was called, it appears, to bolster Turner's self-defense claim, that his fear of

Reynolds was reasonable. (Ans., Dkt No. 13 at 347.)[2] Counsel apparently felt that the benefits of such testimony outweighed the risk that such testimony could also be evidence of a "revenge motive." (*Id.*) Amons also testified that before shooting Reynolds, Turner seemed like he had taken "zombie pills" because he was walking "with his head down . . . he was going straight ahead." (*Id.* at 177.)

This claim was not raised on direct appeal, but rather only on collateral review. When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not de novo. "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

Habeas relief is not warranted. The evidence of Turner's guilt, and that the homicide was the result of premeditation and deliberation, was so strong that even if counsel's performance was deficient, there was no prejudice. Turner had a motive to kill Reynolds, whom he blamed for the murder of his stepbrother, Michael Amons. His girlfriend said Reynolds's name came up every time Michael's death was discussed. He testified that on the day of the killing a friend told him that Reynolds was leaving and advised Turner "Don't trip." Harrison, who knew both men and had lived in Parchester Village for 64 years, saw Turner walk up to Reynolds and shoot him at close range, after which Turner calmly looked at Harrison and walked into his house. Harrison testified that Turner blamed Reynolds for Michael's death. And after the killing, Turner "acted normally," and he wrote rap lyrics that mentioned Michael Amons and referred to Turner's belief in "eye for an eye" justice. (Ans., Dkt. No. 13 at 234, 237, and 238.)

---

[2] Trial counsel's stated reasons come to the Court through a declaration by habeas counsel (Solomon Wallack) who spoke to trial counsel (Brooks Osborne) about his reasons for calling Amons to testify. (Ans., Dkt. No. 13 at 347.)

1 Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable. The state court's decision is entitled to AEDPA deference and this claim is DENIED.

### ii. Failing to Ask for Jury Instruction

Turner also claims that defense counsel should have asked for a cautionary jury instruction regarding Amons's testimony. Counsel should have asked for CALCRIM No. 358 ("Evidence of Defendant's Statements"), which "instructs the jury to '[c]onsider with caution' any unrecorded statement made by the defendant tending to show his or her guilt." (Ans., Dkt. No. 13 at 238.)

This claim was rejected on appeal. Any error was harmless. Turner, who testified at trial, did not deny making the statements Amons testified Turner made; there was "no 'conflict in the evidence about the exact words used, their meaning, or whether the admissions were repeated accurately';" and, other instructions adequately informed the jury how to evaluate the credibility of witness statements. Also, there was no prejudice. The evidence of guilt was strong, as detailed above. (*Id.* at 239-240.)

Habeas relief is not warranted. The state appellate court reasonably determined that the lack of such an instruction did not deny Turner due process. He admitted to making the statements. Other instructions cautioned the jury to take care in assessing credibility. The state court's rejection of this claim is entitled to AEDPA deference. This claim is DENIED.

### B. Rap Lyrics

Turner alleges that counsel rendered ineffective assistance when he did not object to the admission of rap lyrics Turner wrote. (Pet., Dkt. No. 1 at 5.) The lyrics were prejudicial, he contends, because they discussed crimes, glorified violence, and spoke approvingly about a gang lifestyle and gang activities. He believes that they unjustly led the jury to assume that he had criminal inclinations. (*Id.* at 28-29.) Had counsel objected, the lyrics would have been excluded.

This claim was rejected on appeal in a summary fashion. "Because it is possible

Turner's trial counsel had a rational tactical ground for not objecting to the rap lyrics, Turner's claim of ineffective assistance of counsel fails." (Ans., Dkt. No. 13 at 244.)

The state appellate court excerpted the lyrics as follows:

> It's a lot a niggas in here that ain't solid at all/Speck behind yo back my nigga dat ain't gangsta at all/On da real, dats something I expeck from a broad/whoever raised u, I swer they did a taireable job/cause u's a nurd and nall you ain't wit da shit/u be frontin', you ain't never sent a bitch/Look in his eyes he wasn't bulid for this shit/the stories is lies, fiction, urben books can't ova look da truth I'm wit da shit/on da real, I ain't tryna bring back da rich/just Parchester dat' s wat I do it for/Animal on da real. I love you bro/Yhr In da billin and we shine'n Bro/Tay goin crazy Dip he da rowist Tho/Swich up never I really love all my bros and I'm rock'n untill the day the lord calls me home[.]
>
> . . . .
>
> It ain't to many niggas like me. I'm just keep'n it real/I hear niggas talk'n but niggas aint squeez'n they steal/I'm locked up and niggas still aint squeez'n for gil/got dame, I though niggas was rock'n fo real/Wat happened to them niggas they still on the shelf/they old school trophys collet'n dust and nothing else/I guess it's really true wat they say, outa site outa mind/that aint how I was raised, I was raised an eye for an eye/Slide, you know I do dat/Swich up, fuck nall ain't no way I'm a do dat/I don't fuck wit master splenters them niggas IS surer rats/and you can ask gong, he'a tell u that's a fact I still rock wit a gleeko, yea I'm from da gAnimal rest in peace bro I'm play'n for keeps/I'm really livin this shit that you niggas rappin about/Just check my street crag I'm solid wit out a doubt.

(Ans., Dkt. No. 13 at 232-233.)

The meaning of certain lyrics was explained at trial by a police officer from Richmond. "Animal" was Michael Amons's nickname. (*Id.* at 231.) "[S]queez'n they steel" means "to fire your gun," and "gleeko" is slang for a Glock pistol. (*Id.* at 233.) "Da rich" refers to Richmond, and "Parchester," of course, to Parchester Village, where Reynolds was shot. When Turner was asked on cross-examination what certain words in the lyrics meant, he responded, "I just write" or "I don't know." (Ans., Dkt. No. 13-5 at 35-38.)

Habeas relief is not warranted. Any objection would likely have been denied. The lyrics were of great evidentiary value, highly relevant, and were something close to an

9

uncoerced confession. They were undoubtedly Turner's work; referred to his belief in retributive justice ("I was raised an eye for an eye"); fondly mentioned his stepbrother ("gAnimal rest in peace bro"); spoke of guns and Parchester; and contained Turner's admission that his lifestyle was no mere pose ("I'm play'n for keeps/I'm really livin this shit that you niggas rappin about/Just check my street crag I'm solid wit out a doubt."). Counsel likely made no objection because of the obviously high probative value of the evidence. It is both reasonable and not prejudicial for defense counsel to forgo a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Also, the lyrics confirmed facts already known to the jury through the testimony of witnesses.

Furthermore, even if counsel's performance was deficient, there was no prejudice. Eyewitnesses testified about the shooting and the tense history between Turner and Reynolds.

The state court's rejection of this claim was reasonable and is therefore entitled to AEDPA deference. This claim is DENIED.

### C. Gang Affiliation Evidence

Turner contends that trial counsel provided ineffective assistance in failing to object when the prosecutor introduced evidence that he had associated with gang members. Such evidence was prejudicial since the shooting had nothing to do with gangs and there was no gang enhancement charge brought against Turner. (Pet., Dkt. No. 1 at 23.)

While cross-examining Amons, the prosecutor asked if Turner recently had associated with gang members in the community. (Ans., Dkt. No. 13 at 240-241.) Defense counsel objected on the grounds of relevance and foundation, but did not object under Evidence Code section 352 (that the evidence was more prejudicial than probative). (*Id.*) The trial court overruled the objection when the prosecutor explained that the question went to Officer Purcell's opinion that Turner was not a gang member. (*Id.* at 240.) Amons answered that Turner had been "hanging around" known gang members around the time of the shooting. (*Id.* at 241.)

This claim was rejected on appeal. Even if the trial court erred by allowing the testimony regarding gang affiliation, the error was harmless because the focus of the trial was the shooting, not gang affiliation, and the evidence of his guilt was strong. (*Id.* at 242.)

Habeas relief is not warranted. First, a petitioner's due process rights concerning the admission of propensity or character evidence is not clearly established for purposes of review under AEDPA, the Supreme Court having reserved this issue as an "open question." *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006). Second, even if the evidence was prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Finally, even if relief is not barred by *Alberni* and *Holley*, no prejudice has been shown. The gang evidence was a small matter in light of the very strong eyewitness testimony that unequivocally established that Turner approached Reynolds and shot him.

The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

### III. Cumulative Error

Turner claims that even if the errors individually do not justify relief, the cumulative effect of all errors resulted in a fundamentally unfair trial. This claim was rejected on appeal. (Ans., Dkt. No. 13 at 244.)

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003). Where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (overruled on other grounds).

11

Habeas relief is not warranted because Turner has not shown any errors. There can be no cumulative error. The state court's rejection of Turner's claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## CONCLUSION

The state court's adjudication of Turner's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Turner may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** November 22, 2017

William H. Orrick
United States District Judge